**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTINA TRUST,  )<br>                        )<br>         Plaintiff,     )<br>                        )<br>    vs.              )<br>                        )<br>K&P HOMES et al.,       )<br>                        )<br>         Defendants.   )<br>                        ) | 2:15-cv-01534-RCJ-VCF<br><br>**ORDER** |

This case arises out of a homeowners' association foreclosure sale. Pending before the Court is a Motion to Dismiss the Counterclaim (ECF No. 11) and a Counter-Motion for Summary Judgment (ECF No. 14). For the reasons given herein, the Court grants the motion to dismiss and denies the motion for summary judgment.

## I.   FACTS AND PROCEDURAL HISTORY

On or about July 25, 2007, Rita Wiegand purchased real property located at 7461 Glimmering Sun Avenue, Las Vegas, Nevada, 89178 (the "Property"), giving lender Universal American Mortgage Co., LLC ("UAMC") a promissory note for $284,200 (the "Note"), secured by a deed of trust (the "DOT") against the Property. (Compl. ¶¶ 5, 9–10, ECF No. 1). On January 30, 2014, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, f.k.a. Countrywide Home Loans Servicing, LP ("BOA"), assigned the Note and DOT to

Plaintiff Christina Trust. (*Id.* ¶ 13; Assignment, ECF No. 1-1, at 29).[1] After recording a Notice of Delinquent Assessment Lien (the "NDAL"), a Notice of Default and Election to Sell ("the "NOD"), and a Notice of Foreclosure Sale (the "NOS"), the Tuscalante Homeowners Association (the "HOA"), through its agent Nevada Association Services, Inc. ("NAS"), sold the Property at auction to Defendant K&P Homes ("K&P") for $40,000 on May 31, 2013. (Compl. ¶¶ 6, 11–12, 14–17). None of the pre-sale notices identified what portion of the HOA lien was for superpriority versus subpriority amounts, such as late fees, collection costs, interest, fines, etc., or provided any notice of a right to cure. (*Id.* ¶¶ 19–22). Furthermore, the HOA and NAS did not comply with notice requirements under Chapter 116 of the Nevada Revised Statutes ("NRS"). (*Id.* ¶ 26).

Plaintiff sued Defendant in this Court for unjust enrichment and to quiet title to the Property, i.e., for a declaration that the DOT still encumbers the Property because the HOA sale was not in accordance with Chapter 116, did not provide an opportunity to cure the default, was commercially unreasonable, and did not comport with due process.[2] K&P answered and filed a Counterclaim to quiet title to the Property, i.e., for a declaration that K&P is the title owner of the Property, that its deed is valid and enforceable, that the HOA sale extinguished Plaintiff's DOT, and that K&P's title is superior to any adverse interest in the Property. K&P also filed a Third-Party Complaint against Wiegand for the same declarations. Plaintiff has moved to

---

1 The Complaint contains no allegation of any assignment from UAMC to BOA, and neither the Assignment attached as Exhibit 3 or any other attachment indicates any such transfer. Plaintiff has sufficiently alleged beneficial ownership of the Note and DOT (reading the allegation that Plaintiff is the beneficiary of the DOT favorably to Plaintiff to imply that she is also the beneficiary of the Note), (*see* Compl. ¶ 5), but without further proof of the chain of assignment, the Complaint could probably not survive a summary judgment motion as to Plaintiff's standing.

2 The claim for a preliminary injunction is not a separate cause of action, and no motion for a preliminary injunction has been filed.

1  dismiss the Counterclaim.  K&P has opposed the motion and has moved for offensive summary
2  judgment on the Counterclaim.

3  **II.     LEGAL STANDARDS**

4  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
5  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
6  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
7  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
8  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule
9  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720
10 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for
11 failure to state a claim, dismissal is appropriate only when the complaint does not give the
12 defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*
13 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is
14 sufficient to state a claim, the court will take all material allegations as true and construe them in
15 the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
16 Cir. 1986).  The court, however, is not required to accept as true allegations that are merely
17 conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*
18 *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

19 A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a
20 plaintiff must plead facts pertaining to his own case making a violation "plausible," not just
21 "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556)
22 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
23 draw the reasonable inference that the defendant is liable for the misconduct alleged.").  That is,
24

under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

///

## III.     ANALYSIS

Plaintiff argues against the Counterclaim on five bases: (1) NRS 116.3116 *et seq.* are unconstitutional under the Due Process Clause for lack of notice; (2) NRS 116.3116 is unconstitutional under the Takings Clause; (3) NRS 116.3116 is unconstitutional under the substantive component of the Due Process Clause of the federal and state Constitutions; (4) the interpretation of NRS 116.3116 by the Nevada Supreme Court in *SFR Invs. Pool I, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) is contrary to public policy; and (5) *SFR Invs. Pool I, LLC* should be applied only prospectively, i.e., only to HOA foreclosures occurring after the announcement of that opinion. The Court recently addressed each of these arguments (except the substantive due process argument) in a published case with similar facts. *See US Bank, N.A. v. SFR Invs. Pool 1, LLC*, --- F. Supp. 3d ----, 2015 WL 5023450 (D. Nev. 2015) (Jones, J.). In dismissing (with leave to amend) a similar quiet title Counterclaim by the buyer at the HOA sale against the first deed of trust holder, the Court rejected the second, fourth, and fifth arguments made here, *id.* at *5–7, accepted the first argument, *id.* at *8–14, and invited the third argument upon potential amendment, *id.* at *5–7.

The basis for the Court's dismissal of the Counterclaim in *US Bank* was that although Circuit law made clear that a litigant must allege direct state or local government involvement in a non-judicial foreclosure sale beyond mere creation of the non-judicial remedy to invoke the Due Process Clause as to his own claims and could not invoke the rule of *Shelley v. Kraemer*, 334 U.S. 1 (1948), such a litigant could invoke the rule of *Shelley* and the Due Process Clause in his capacity as a defendant or counterdefendant. *Id.* at *10–11. In cases such as *US Bank* and the present case, that means claims or counterclaims seeking judicial validation of non-judicial foreclosure sales are amenable to attack under the Due Process Clause (of the Fourteenth or Fifth

Amendments, respectively, depending on whether the case is decided in state or federal court) for lack of notice. *See id.* The Court determined that the notice requirements of Chapter 116 did not satisfy due process. *Id.* at *11–13. Because the counterplaintiff had alleged only compliance with Chapter 116 and had not further alleged having provided notice in a way that would satisfy due process, the Court dismissed the counterclaim with leave to amend. *Id.* at *14 ("In summary, the relevant statutes do not satisfy due process where a sale can be characterized as government action. SFR's Counterclaim for a declaration by this Court of the extinguishment of U.S. Bank's interest via the HOA foreclosure sale implicates government action under the rule of *Shelley* and the Due Process Clause of the Fifth Amendment. The Court therefore dismisses SFR's Counterclaim, with leave to amend. If SFR can affirmatively allege that it or its agent gave U.S. Bank constitutionally sufficient notice, i.e., personal or mailed notice, the Counterclaim should be permitted to proceed to summary judgment. As the Court has explained, *supra*, U.S. Bank's own quiet title claim cannot succeed on the due process issue without a showing of state action in the non-judicial foreclosure sale itself, but that issue is not now before the Court.").

Here, however, K&P has alleged more than mere compliance with Chapter 116's requirements. K&P has alleged that Christina Trust was "mailed by certified or registered mail, return receipt requested, a notice of sale for the Property." (Countercl. ¶ 15, ECF No. 8). Because K&P has sufficiently alleged having mailed Christina Trust notice of the sale, the Court will not dismiss the Counterclaim for a declaration that the sale extinguished Christina Trust's interest in the Property for lack of notice under *Shelley* and the Due Process Clause of the Fifth Amendment.

The Court now addresses the substantive due process issue. As the Court noted in *US Bank*, a federal court may strike down a state statute under the "substantive due process"

component of the Due Process Clause of the Fourteenth Amendment where a law deprives a person of a right to life, liberty, or property that a court in its "reasoned judgment" believes is "fundamental," even if the proffered right is not specifically listed in the Constitution, so long as the right can be perceived from history, tradition, or "new insight." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2605 (2015) (liberty interest) ("[T]he Constitution contemplates that democracy is the appropriate process for change, so long as that process does not abridge fundamental rights. . . . [But] when the rights of persons are violated, the Constitution requires redress by the courts, notwithstanding the more general value of democratic decisionmaking." (citations and internal quotation marks omitted)); *see also Lochner v. New York*, 198 U.S. 45, 56–57 (1905) (liberty and property interests) ("This is not a question of substituting the judgment of the court for that of the legislature. . . . It is a question of which of two powers or rights shall prevail, the power of the state to legislate or the right of the individual to liberty of person and freedom of contract."). A court should only exercise its reasoned judgment to invalidate a democratically enacted law in the absence of any clear constitutional requirement to do so after there has been "a quite extensive discussion" concerning the right at issue in the halls of government and amongst the general public. *Obergefell*, 135 S. Ct. at 2596.

Plaintiff argues that Chapter 116, or at least the Nevada Supreme Court's interpretation of it contrary to how a reasonable lender would have understood it when giving his loan, deprives Plaintiff and others of their fundamental right to property. Under that recent interpretation, a first mortgage recorded before an HOA lien even arises is extinguished by a foreclosure of the HOA lien so long as the declaration creating the HOA was recorded before the first mortgage was. In other words, the mere recordation of an HOA declaration that could in theory give rise

to future HOA liens is treated under Chapter 116 as essentially constituting record notice of yet-nonexistent HOA liens.

The Court reserves judgment on the substantive due process issue and determines the motion under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) (recognizing limitations on the retroactive application of judicial rulings as a matter of common law equity), *abrogated in part by Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993) (holding that when the Supreme Court interprets federal law, inferior courts should as a default apply that interpretation retroactively). In *Huson*, the plaintiff sued his employer in 1968 for injuries sustained on the job in 1965. *Id.* at 98. Because the injury occurred on the Outer Continental Shelf, it was initially thought that the action was limited only by the laches doctrine under federal admiralty law, and that no state statute of limitations applied. *Id.* at 98–99. Before trial, however, the Supreme Court ruled in another case that admiralty law did not apply in cases such *Huson*, and state statutes of limitations applied. *Id.* at 99. The district court therefore applied a one-year state limitations period and granted summary judgment to the defendant. *Id.* The plaintiff argued on appeal that the intervening Supreme Court case should not be applied retroactively to bar actions before the holding was announced. *Id.* The Court of Appeals ruled that the district court had misread the intervening Supreme Court case, holding that laches, not any state statute of limitations was the only potential time-bar, and remanding for trial. *Id.* The Supreme Court granted certiorari and ruled that the district court had in fact read the disputed case properly but affirmed the Court of Appeals because the rule should not have been applied retroactively. *Id.*

In reaching that conclusion, the Court cited ten of its own cases dating as far back as the Civil War for the rule limiting the retroactivity of "judicial decisions" not only in criminal cases but also "in cases of nonconstitutional, noncriminal state law." *Id.* at 106 (collecting cases). The

Court identified three factors used to determine whether a rule of law should be applied by a court only prospectively, i.e., "nonretroactively":

> [(1)] the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed[; (2)] we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation[; and (3)] we have weighed the inequity imposed by retroactive application, for [w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id.* (citations and internal quotation marks omitted; final alteration in original).

Because the interpretation of the relevant statute in that case was a matter of first impression and overruled a long line of decisions by the Fifth Circuit, the first factor favored nonretroactivity. *Id.* at 107. The Court noted, "We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights." *Id.* (quoting *Griffin v. Illinois*, 351 U.S. 12, 26 (1956) (Frankfurter, J., concurring in the judgment)). The Court then noted that the purpose of the statute, as interpreted by the Court in the intervening case, was to afford comprehensive remedies to injured employees, and retroactive application in that case would have thwarted that purpose. *Id.* at 107–08. Finally, the results of retroactive application would have been inequitable because it would have punished the plaintiff for having purportedly slept on his rights at a time when he had no reason to suspect his remedy would be imperiled by delay. *Id.* at 108.

In the present case, the first factor weighs heavily against the retroactive application of *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014). It is not disputed that both the state and federal trial courts were in sharp disagreement as to whether an HOA foreclosure sale under NRS 116.3116 extinguished a prior-recorded first mortgage, *see id.* at 412

("Nevada's state and federal district courts are divided on whether NRS 116.3116 establishes a true priority lien."), and that the practice in the real estate industry prior to the announcement of the Nevada Supreme Court's controversial decision was to treat such sales as not extinguishing first mortgages, such that traditional investors would not bother to bid at such sales where the home was worth less than the first mortgage. At best, the decision "decid[ed] an issue of first impression whose resolution was not clearly foreshadowed."

The second factor also weighs in favor of nonretroactivity. The retroactive application of the rule would not further the purpose of the rule—to ensure HOAs are quickly made whole on the superpriority portions of their liens by pressuring banks to pay that amount before the HOA foreclosure, on pain of losing their own security interests—beyond mere prospective application. Indeed, in no case of which the Court is aware has an HOA failed to obtain a bid at auction sufficient to cover its entire lien, not just the relatively small superpriority amount. The real fight is between mortgagees and speculators who gambled on an improbable interpretation of NRS 116.3116 and were able to capitalize on the confusion before banks caught on to the issue and the Nevada Legislature imposed more stringent notice requirements.

The third factor also favors nonretroactivity. The extinguishment of a first-recorded mortgage via the foreclosure of a lien worth a tiny fraction of that mortgage, particularly where notice to the mortgagee is not robust enough to satisfy basic principles of due process were the foreclosing entity a state actor and where the extinguishment rule was not only unclear but presumed within the relevant industry at the time of the foreclosure sale to be to the contrary, would be an extremely, not just a substantially, inequitable result.

In summary, the Court cannot sanction the retroactive application of *SFR Investments Pool 1* under the *Huson* test. The remaining questions, although they are in realty antecedent

questions, are whether *Huson* presents a federal constitutional rule or merely a rule of federal common law that the Court should not apply in diversity under *Erie*, and, if *Huson* is only a matter of federal common law, whether an identical or similar rule is nevertheless supported as against the states under the substantive component of the Due Process Clause of the Fourteenth Amendment, or, if not, whether the Nevada Supreme Court nevertheless respects a similar rule under state common law.

*Huson* does not mention due process or the Fifth or Fourteenth Amendments and must therefore be considered as a rule of federal common law. The Court finds it need not address the substantive due process issue, however, because the Nevada Supreme Court itself has quoted the *Huson* rule in approval, such that the Court perceives no *Erie* problem with applying *Huson* here. *See Breithaupt v. USAA Prop. & Cas. Ins. Co.*, 867 P.2d 402, 405 (Nev. 1994). The Court in *US Bank, N.A. v. SFR Invs. Pool 1, LLC* resolved the motions before it on different grounds and therefore did not address the issue closely; rather, it assumed the Nevada Supreme Court would apply its ruling retroactively. A closer look, however, shows both that *SFR Investments Pool 1* is silent on retroactivity and that the Nevada Supreme Court approves the *Huson* rule. In conclusion, the Court finds that *SFR Investments Pool 1* does not apply retroactively in this case under the *Huson* rule, as approved in *Breithaupt*, and therefore grants the motion to dismiss the Counterclaim on that basis.

In response, K&P argues that because NRS 116.3116 was enacted in 1991, Plaintiff cannot have been surprised when the Nevada Supreme Court enforced it in 2014. But that misperceives Plaintiff's argument and the case law, which concerns the fairness of retroactively applying changed or first-impression interpretations of law. Plaintiff does not argue that NRS 116.3116 was clear in 1991 but that its 2014 interpretation in accordance therewith should not

apply except to HOA foreclosures occurring after the date of interpretation. That would indeed be a frivolous argument. Such a plaintiff could not claim inequitable surprise. But Plaintiff does not make that argument. Rather, Plaintiff argues that NRS 116.3116 was (at best) unclear until the Nevada Supreme Court first interpreted it in 2014. That argument is fair and requires an analysis under *Huson* and *Breithaupt*. K&P does not argue under the *Huson*/*Breithaupt* factors but essentially proposes a rule that necessarily favors retroactive application where the statute being interpreted predates a court's interpretation of it. Such a rule would of course obviate any retroactivity analysis, because under the rule against advisory opinions, the American courts do not generally interpret statutes that have not yet been adopted. The Court rejects this line of argument. Finally, because the Court dismisses the Counterclaim, it also denies the counter-motion for summary judgment.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 11) is GRANTED.

IT IS FURTHER ORDERED that the Counter-Motion for Summary Judgment (ECF No. 14) is DENIED.

IT IS SO ORDERED.

Dated this 9th day of November, 2015.

_____
ROBERT C. JONES
United States District Judge