**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTIANA TRUST, ) | |
| ) | |
| Plaintiff, ) | 2:15-cv-01534-RCJ-VCF |
| ) | |
| vs. ) | |
| ) | |
| K&P HOMES et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |

## I.    FACTS AND PROCEDURAL HISTORY

This case arises out of a homeowners' association foreclosure sale. In 2007, Rita Wiegand purchased real property in Las Vegas, Nevada, giving the lender a promissory note for $284,200 secured by a deed of trust ("the DOT"). In 2013, the Tuscalante Homeowners Association ("the HOA") sold the property at auction to K&P Homes ("K&P") for $40,000. In 2014, Bank of America assigned the note and DOT to Christiana Trust ("the Trust"). The Trust sued Wiegand and K&P in this Court for unjust enrichment and to quiet title, i.e., for a declaration that the DOT still encumbers the property because (among other reasons) the sale did not comport with due process. K&P filed a Counterclaim to quiet title and filed a Third-Party Complaint against Wiegand. The Court granted the Trust's motion to dismiss the Counterclaim,

anticipating that *SFR Investments Pool I, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) did not apply retroactively.

K&P asked the Court to certify the retroactivity question to the Nevada Supreme Court. The Court granted the motion, because the issue was potentially dispositive of the quiet title claim. Earlier this year, the Nevada Supreme Court answered the certified question in the affirmative, i.e., that *SFR Investments Pool I* does apply retroactively. In the meantime, however, the Court of Appeals had decided *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), holding that the previous opt-in notice scheme under Chapter 116 was facially unconstitutional under the Due Process Clause of the Fourteenth Amendment. The Court had previously rejected the due process argument, but *Bourne Valley* appeared to require the Court to reconsider and quiet title in favor of Plaintiff. *See Bank of N.Y. Mellon v. Ravenstar Invs., LLC*, No. 3:17-cv-116, 2017 WL 2588088, at *3–4 (D. Nev. June 14, 2017) (Jones, J.). The Court noticed the issue when the parties notified the Court of the issuance of the Nevada Supreme Court's opinion answering the certified question. The Court therefore ordered K&P to show cause why title should not be quieted in Christiana Trust's favor. The parties have briefed the issue, and the Court now addresses it.

## II.    DISCUSSION

### A.    The Precedential Value of *Bourne Valley*

K&P argues that *Bourne Valley* does not control because the case "is not complete—it was remanded for further proceedings." But the fact that *Bourne Valley* was remanded (in the usual manner) "for proceedings consistent with this opinion" does not imply that the issues decided are not yet binding in that case or throughout the Circuit. It simply means that the district court is to proceed to judgment in the particular case in accordance with the legal rule(s)

declared by the Court of Appeals. The issue—the unconstitutionality of the previous opt-in

notice scheme under Chapter 116—has been finally decided and is binding on this Court. The

Supreme Court has denied certiorari in *Bourne Valley*, and the mandate has issued.

**B.** **Interpretation of Chapter 116**

Next, K&P argues that even when the unconstitutional opt-in provisions of Chapter 116

are severed, Nevada Revised Statutes section ("NRS") 116.31168(1) previously incorporated

NRS 107.090's notice requirements. But both this Court and the Court of Appeals have ruled

that NRS 116.31168(1) did not incorporate subsections (3) and (4) of NRS 107.090, and that

even if it had done so, that would not have required notice to first deed of trust holders. *See*

*Bourne Valley Court Tr.*, 832 F.3d at 1159; *US Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 3:15-

cv-241, 2016 WL 4473427, at *5 & n.1 (D. Nev. Aug. 24, 2016) (Jones, J.). Even if this Court

were to reconsider its own rulings—which it does not—it would be bound by the Court of

Appeals' ruling on the issue.

K&P notes that Judge Boulware has certified to the Nevada Supreme Court the question

of whether the pre-October 1, 2015 version of NRS 116.31168(1) required notice to the first

deed of trust holder. If the answer were "yes," then the notice scheme would presumably not be

facially unconstitutional, and the facts of notice in this case would have to be litigated. But a

plain reading of the statutes and both the objective and subjective legislative intent behind the

2015 amendments lead to the inescapable conclusion that notice was not previously required.

*See, e.g.*, *Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, No. 2:15-cv-583, 2017 WL

3526256, at *2 (D. Nev. Aug. 16, 2017) (Jones, J.) (citing *US Bank, N.A.*, 2016 WL 4473427, at

*5 & n.1).

A plain reading of NRS 107.090 indicates that even if fully incorporated into NRS 116.3168, notice to a first deed of trust holder was not required thereunder, because the statute required notice only to those who opted in and to "[e]ach other person with an interest whose interest or claimed interest is *subordinate to the deed of trust*," and a deed of trust is not subordinate to itself. Nev. Rev. Stat. § 107.090(3)(b) (emphasis added).  In other words, even the total incorporation of NRS 107.090 would not require notice to first deed of trust holders.  The previous incorporation statute read, "The provisions of NRS 107.090 apply to the foreclosure of an association's lien *as if a deed of trust were being foreclosed*." *Id.* § 116.31168(1) (2005) (emphasis added).  It did not read, "The provisions of NRS 107.090 apply to the foreclosure of an association's lien, *except that a deed of trust holder is also entitled to the notice that subordinate lienholders would be entitled to were the deed of trust itself being foreclosed*." Something like the latter emphasized language would be required to conclude that deed of trust holders were entitled to the same notice under Chapter 116 that subordinate lienholders were entitled to under Chapter 107.

As this Court has noted, the objective legislative intent clearly indicates that notice was not previously required, because the Nevada Legislature amended NRS 116.31162–.31163 in 2015 to provide for notice to deed of trust holders.  And the subjective legislative history—an analysis the Court now undertakes for the first time, because although it is not the Court's preferred method of statutory interpretation, another court may find it important—leaves no doubt that it was the intent of the Nevada Legislature when adopting the 2015 amendments to Chapter 116 (via Assembly Bill 240 ("AB 240") and companion Senate Bill 306 ("SB 306")) to add a notice requirement that did not previously exist. *See* Nev. Ass. Jud. Subcomm. Hr'g, Mar. 19, 2015, *available at* http://nvleg.granicus.com/ MediaPlayer.php?clip_id=3847.  At a time

when an early draft version of AB 240 would have gone so far as to require judicial foreclosure

under Chapter 116, Vice Chair of the Assembly Judiciary Subcommittee David Gardner testified

that he and his co-sponsors might amend AB 240 to replace the judicial foreclosure requirement

with changes to the notice requirements that would provide due process to first deed of trust

holders. *See id.* 11:00–11:49.

The bill was indeed so amended, according to the testimony of SB 306 co-sponsor

Senator Aaron Ford. *See* Nev. Sen. Jud. Comm. Hr'g, Apr. 7, 2015, *available at*

http://nvleg.granicus. com/MediaPlayer.php?clip_id=4205 ("Because [under the Nevada

Supreme Court's 2014 interpretation of NRS 116.3116] a foreclosure of an HOA's superpriority

lien extinguishes the first mortgage lien on a home and on other subordinate liens, it is important

that those lienholders receive notice of the HOA's foreclosure that is sufficient to enable those

lienholders to protect their interest."). It is inconceivable that Senator Ford would have made

that statement if he perceived that such notice was already required. Senator Ford explained to

Senate Judiciary Committee Chairman Greg Brower that the reason for the notice provisions was

to give lienholders the opportunity to prevent the loss of a several-hundred-thousand-dollar lien

via an auction for a few thousand dollars—a common occurrence. *See id.* 16:55–17:30. General

Counsel for the Federal Housing Finance Agency ("FHFA," the federal statutory conservator of

Fannie Mae and Freddie Mac) testified that notice to lienholders was a "core issue" to his

agency's support of the bill; although the FHFA was opposed to the extinguishment of a first

mortgage via an HOA foreclosure as a general matter, SB 306 would avoid that result as a

practical matter because of the new notice requirements. *See id.* 29:00–46:00. The issue of the

need for notice to deed of trust holders in order to avoid the "problematic" inequity of the

extinguishment of large liens via the foreclosure of comparatively tiny liens was stressed

throughout the hearing in exchanges between Chairman Brower and representatives of both the banking and HOA industries. (*See id. passim*).

Senator Ford testified at a later hearing that "Section 2 . . . adds a requirement that the notice of default and election to sell must include a detailed and itemized statement of the amounts due to the association and must be mailed to each holder of a recorded security interest, again addressing the notice issue and the specificity issue that were the main contentions of disagreement." *See* Nev. Ass. Jud. Subcomm. Hr'g 2:03:35–2:03:57, Apr. 28, 2015, *available at* http://nvleg.granicus.com/MediaPlayer.php?clip_id=4497.  He also testified that section 3 of the bill "*eliminates the current requirement* that security holders must notify the association of their interest in order to receive notice." *Id.* 2:04:43–2:04:51 (emphasis added).

In summary, both the objective and subjective legislative intent, along with a plain reading of the previous statutes, compel the conclusion that notice was not previously required outside of the constitutionally insufficient opt-in procedure and publication.

C.     The "Return Doctrine"

Next, K&P argues that the sale in this case is saved by Nevada's "return doctrine."  That is, although the 1993 opt-in version of Chapter 116's notice scheme was ruled unconstitutional in *Bourne Valley*, the previous version required the HOA to give notice without an opt-in requirement. *See* Nev. Rev. Stat. § 116.31168 (1991) ("The association must also give reasonable notice of its intent to foreclose to all holders of liens in the unit who are known to it.").  K&P argues that under the return doctrine, an unconstitutional statute reverts to its latest constitutional version, *see We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166, 1176 (Nev. 2008), so the Court should assess the constitutionality of the HOA's sale in this case under the 1991 version of NRS 116.31168.  The Trust argues that the doctrine does not even exist in the

way K&P suggests.  Even presuming that it does, the Court rejects the argument for reasons

given by another judge of this District. *See PNC Bank, N.A. v. Wingfield Springs Cmty. Ass'n*,

No. 3:15-cv-349, 2017 WL 4172616, at *3 (D. Nev. Sept. 20, 2017) (Du, J.).

Upon even closer examination, the Court is convinced that the 1991 version of NRS

116.31168 is also insufficient under the Due Process Clause.  First, the previous statute only

required notice of the "intent to foreclose," Nev. Rev. Stat. § 116.31168 (1991), e.g., via a notice

of default and election to sell.  The Due Process Clause, however, requires "[n]otice by mail or

other means as certain to ensure actual notice" of the "proceeding which will adversely affect the

liberty or property interests of any party," e.g., via a notice of sale. *Mennonite Bd. of Missions v.

Adams*, 462 U.S. 791, 800 (1983) ("[A] mortgagee's knowledge of delinquency in the payment

of taxes is not equivalent to notice that a tax sale is pending.").  Second, the Due Process Clause

requires notice not only to those lienholders "who are known," Nev. Rev. Stat. § 116.31168

(1991), but to all lienholders whose "name[s] and address[es] are reasonably ascertainable."

*Mennonite Bd. of Missions*, 462 U.S. at 800.  Because the 1991 version of NRS 116.31168

permitted foreclosure without reasonable notice of the time and place of sale to all lienholders

whose identities and addresses were reasonably ascertainable, but only notice of the bare intent

to foreclose to those lienholders who were already known, the return doctrine cannot validate the

foreclosure here even assuming the doctrine applies precisely as K&P argues it does.

**D.      State Action**

Finally, K&P argues that the Court should not follow rulings by the Court of Appeals as

to state law issues where the Nevada Supreme Court has since issued contrary rulings.  The

Court agrees with that statement as a general matter. *See Erie R.R. Co. v. Thompkins*, 304 U.S.

64, 78 (1938).  And it is correct that the Nevada Supreme Court has ruled that Chapter 116

foreclosures do not constitute state action so as to implicate the Due Process Clause, disagreeing with *Bourne Valley. See Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg.*, 388 P.3d 970, 973–74 & n.5 (Nev. 2017). But the issue of state action under the Due Process Clause is indisputably an issue of federal law. *See, e.g.*, *Marshall v. Sawyer*, 301 F.2d 639, 646 & n.5 (9th Cir. 1962) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)). The Nevada Supreme Court of course has the power to rule on federal issues wherever it has jurisdiction over a case, but this Court must adhere to the rulings of the Court of Appeals on federal issues. Even where federal appellate law is silent on an issue, a state court's opinion on an issue of federal law is only potentially persuasive, not binding; and where the Court of Appeals has actually ruled on the federal issue, as here, this Court may not even consider a contrary state court ruling. *See Bittaker v. Enomoto*, 587 F.2d 400, 402 n.1 (9th Cir. 1978).

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff shall submit a proposed judgment quieting title in its favor consistent with the Court's orders within seven (7) days.

IT IS SO ORDERED.

Dated this 29th day of December, 2017.

_____
ROBERT C. JONES
United States District Judge